**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-01936-REB-SKC

GREGORY HEARD,

    Plaintiff,

v.

GREG DULAYEV, individually, and
CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

---

**CITY AND COUNTY OF DENVER'S MOTION TO RECONSIDER
DENIAL OF SUMMARY JUDGMENT ON MUNICIPAL LIABILITY**

---

Defendant City and County of Denver ("Denver"), through counsel, respectfully requests that this Court reconsider the portions of its "Order Denying Motion for Summary Judgment" (Doc. #113) denying summary judgment on the municipal liability claims asserted against Denver. Reconsideration is necessary due both to the Tenth Circuit's recently issued opinion in this case, and intervening changes to the law of municipal liability. In support, Denver states as follows:

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the parties conferred at length via teleconference on June 16, 2022 regarding the basis for this motion. Counsel for Mr. Heard later informed undersigned counsel via email that Plaintiff opposes the requested relief.

## LEGAL STANDARD

This Court has broad discretion to reconsider its interlocutory rulings before entry of judgment. See *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."). *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("every order short of a final decree is subject to reopening at the discretion of the district judge."). This Court's order denying summary judgment is interlocutory because no final judgment has entered, and "an order on summary judgment is not judgment itself." *Est. of Jon L. Bogue v. Adams*, No. 18-cv-01425-DDD-MEH, 2021 WL 8153759, at *1 (D. Colo. Dec. 31, 2021), *citing Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018) (in considering motions to reconsider interlocutory rulings, "the district court is not bound by the strict standards for altering or amending a judgment encompassed in [Rules] 59(e) and 60(b)," which govern reconsideration of final judgments).

To warrant relief from an interlocutory order, "a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## ARGUMENT

The Court's December 4, 2019 Order did not explicitly address the issue of municipal liability. That argues in favor of reconsideration, if only to clarify the record regarding the grounds on which the Court denied summary judgment to Denver. Further, there have been intervening

changes in the law. Tenth Circuit opinions issued after the Order here have clarified the standards for single-incident failure-to-train municipal liability claims such as those asserted by Mr. Heard here, and established that such claims should not survive when there is no underlying clearly established constitutional violation. And to the extent the denial of summary judgment here depended upon the Court's conclusion that Officer Dulayev was not entitled to qualified immunity, Denver requests that conclusion now be reconsidered in light of the Tenth Circuit's contrary determination.

**I. Reconsideration is Necessary to Clarify the Grounds for Denial of Summary Judgment on the Municipal Liability Claims**

Denver moved for summary judgment on all claims, including the municipal liability claims. Specifically, Denver's motion and reply asserted that:

- Mr. Heard could not establish municipal liability because he could not show that Officer Dulayev violated the Fourth Amendment [Doc. #71 at 14];

- Mr. Heard had developed no evidence that Denver's training program was deficient (*id.* at 15-16; Doc. #84 at 13-14);

- Mr. Heard had no evidence of any deficiency in Denver's disciplinary process and supervision in 2016, only obsolete testimony from an earlier case predating significant changes in Denver's policies and process (Doc. #71 at 16-17);

- Mr. Heard could not meet the rigorous standard of causation required for failure-to-train claims (*id.* at 17; Doc. #84 at 14);

- Mr. Heard could not establish the required element of deliberate indifference (Doc. #71 at 17-18; Doc. #84 at 14); and

- Mr. Heard's ratification claim failed as a matter of law because it was not properly pleaded, and post-event conduct could not cause the constitutional injury (Doc. #71 at 18-20; Doc. #84 at 15-16).

The Court's Order on summary judgment, however, explicitly addressed none of these arguments. Although the Order cited the parties' briefs (Doc. #113 at 1) and denied Defendant's

motion in its entirety (*id.* at 7), the authorities and analysis in the Order were exclusively directed towards Officer Dulayev's assertion of qualified immunity. *See id.* at 2-6.

Reconsideration will allow the Court to set forth its decision more fully on the municipal liability claims, serving the interests of judicial efficiency and preservation of the record. *Moon v. Tall Tree Administrators, LLC*, 814 F. App'x 371, 374 (10th Cir. 2020) (While a "district court is not required to address, in-depth, every argument for and against summary judgment," an "order that fails to disclose the district court's reasons runs contrary to the interest of judicial efficiency by compelling the appellate court to scour the record in order to find evidence in support of the decision.") (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000) (internal quotations, brackets, and citation omitted)); *see* F.R.C.P. 56(a). And to the extent that any of the municipal liability claims remain against Denver, it will clarify the theories and evidence to enable the parties to adequately prepare for trial.

## II. Mr. Heard's Claims Against Denver Should Be Reconsidered Due to the Tenth Circuit's Opinion Altering the Court's Fact-Finding and Granting Qualified Immunity to Officer Dulayev

This Court's Order denying summary judgment focused entirely on the issue of qualified immunity, suggesting that the Court's decision turned on the question of Officer Dulayev's liability. The Tenth Circuit's reversal of the Order and its determination that Officer Dulayev is entitled to qualified immunity—alongside other very recent opinions clarifying when a municipal liability claim may be pursued without an underlying clearly established constitutional violation—represent intervening changes in the law. The Court should reconsider the municipal liability claims and Denver's summary judgment arguments in light of these changes to the legal landscape,

4

to ensure that the parties have adequate notice of the theories, if any, under which Mr. Heard will be allowed to proceed against Denver at trial.

The Tenth Circuit's opinion in this case did not reach the question of municipal liability, declining to exercise jurisdiction over Denver's appeal of that issue. *Heard v. Dulayev*, 29 F.4th 1195, 1208 (10th Cir. 2022). This flowed from the panel's decision to resolve the case solely on the "clearly established" prong of qualified immunity. *Id*. at 1203 ("In this case, we begin and end our analysis with the second prong."). In short, the court of appeals remained largely silent on the issues of the constitutionality of the officer's conduct and municipal liability, only remanding for further proceedings.

The Tenth Circuit did, however, disagree with some of this Court's conclusions regarding the material facts of Officer Dulayev's interaction with Mr. Heard. Specifically, the Tenth Circuit found two significant facts established by the record. First, "the record clearly shows that Heard had an opportunity to surrender before he took [three] additional steps in the direction of Dulayev." *Id*. at 1201-02. Second, any suggestion that Officer Dulayev "'aggressively shoved [Heard's] face into the dirt' after jumping on him is blatantly contradicted by the record." *Id*. at 1202; *see also id*. at 1199 n.1-2 (noting these two findings). Considering these facts along with the other facts found by this Court, the Tenth Circuit characterized the situation as one in which, "despite repeated warnings and orders to stop, an assault suspect continue[d] to step toward [an] officer at close proximity." *Id*. at 1202; *see also id.* at 1203 ("Heard rose to his feet and continued to take steps toward Dulayev, even after Dulayev had threatened the use of the Taser and repeatedly ordered Heard to stop."); *id*. at 1205 ("Dulayev did issue a warning that he would discharge his Taser if Heard did not 'Crawl out on [his] hands and knees.' … Heard did not follow Dulayev's orders—

5

he rose to his feet after being told to crawl and he continued to walk toward Dulayev after being told to stop.").

The reversal of the Court's Order alters the law of this case, and with it the position of the parties' summary judgment arguments. The Court should reconsider its summary judgment determination, viewing the factual circumstances as described by the Tenth Circuit, as well as the court of appeals' determination that Officer Dulayev did not violate clearly established law.

### III. Intervening Tenth Circuit Law Makes Clear that Municipal Liability Claims Cannot Survive Without an Underlying Clearly Established Constitutional Violation

It is well settled that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Mr. Heard's claim against Denver was grounded solely on Officer Dulayev's alleged violation of clearly established Fourth Amendment law. *See* [Doc. #71 at 18 (noting that Mr. Heard was "without evidence of a pattern of similar violations" upon which to base a failure-to-train theory); Doc. #78 at 22-23 (conceding this by arguing "deliberate indifference may be shown by evidence of a single violation of federal rights") (quotation and citation omitted).] In opinions issued after the summary judgment Order in this case, the Tenth Circuit has reinforced and clarified the very limited circumstances in which a municipal liability claim can survive the dismissal of the underlying constitutional claims against individual officers.

In *Crowson v. Washington County Utah*, the Tenth Circuit reversed the denial of qualified immunity to a prison physician. *Crowson*, 983 F.3d 1166, 1183-84 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. v. Crowson*, 142 S. Ct. 224 (2021). As in this case, the court of appeals in *Crowson* decided the qualified immunity question solely on clearly established grounds. *Id*. at

6

1184. The court went on to consider whether the plaintiff's failure-to-train claim against the county could survive in the absence of any clearly established constitutional violation.

*Crowson* noted the "distinction between cases in which a plaintiff seeks to hold a municipality liable for failing to train an employee who as a result acts unconstitutionally, and cases in which the city's failure is itself an unconstitutional denial of substantive due process." *Id.* at 1190 (quoting *Williams v. City & Cnty. of Denver*, 99 F.3d 1009, 1019 (10th Cir. 1996)). The *Crowson* court clarified that substantive due process municipal liability claims can survive in two circumstances: where the plaintiff argues that the municipal policy or conduct met the "conscience-shocking" standard for a substantive due process violation, or where he alleges a systemic failure on the part of multiple actors: "the combined acts or omissions of several employees acting under a governmental policy or custom." *Id.* at 1185 (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985)); *id.* at 1191 ("In most cases … the question of whether a municipality is liable dependent on whether a specific municipal officer violated an individual's constitutional rights. But *Garcia* remains as a limited exception where the alleged violation occurred as a result of multiple officials' actions or inactions.").

This case falls into neither category. Mr. Heard has never alleged a substantive due process theory or argued that the evidence is "conscience-shocking." Nor has he alleged or argued that his injuries were caused by the acts or omissions of multiple officers. Rather, he has alleged and argued that his claims against Denver arise from this incident alone. Both his single-incident failure-to-train claim and his ratification claim are grounded solely on Officer Dulayev's use of force (including the subsequent investigation of that single use of force). His failure to train claim thus cannot survive the dismissal of the claim against Officer Dulayev.

In another opinion issued after the Order in this case, the Tenth Circuit applied the rule from *Crowson* to affirm the dismissal of failure-to-train and failure-to-supervise claims where there was no violation by any of the individual deputies and (as here) the plaintiff "failed to raise the argument that the combined actions of deputies can suffice for certain *Monell* claims." *Est. of Burgaz by & through Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colo.*, 30 F.4th 1181, 1190 (10th Cir. 2022) ("Because the Estate predicates its unconstitutional-custom claim on the existence of an individual constitutional violation, and no individual deputy committed a constitutional violation here, the claim fails."). In *Burgaz*, unlike this case, the court of appeals rested its qualified-immunity determination on the lack of deliberate indifference, not clearly established law. But as shown in *Crowson*, that distinction does not matter when the plaintiff brings a failure-to-train (or supervise or discipline) claim, since such claims require an underlying violation of clearly established law. *See Burgaz*, 30 F.4th at 1189, *citing Crowson*, 983 F.3d at 1187 *and Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1151, 1154-55 (10th Cir. 2001) (court previously found officials entitled to qualified immunity due to lack of clearly established law, and "a municipality cannot be held liable under these circumstances.").

Indeed, another recent Tenth Circuit opinion explicitly raised the question "[w]hether a municipal policymaker can be liable for deliberate indifference to a constitutional right that has not yet been established." *Contreras ex rel. A.L. v. Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1123 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 1382 (2021) (Carson, J., concurring). Drawing a distinction similar to that in *Crowson*, Judge Carson's concurrence concluded that the answer "depends upon on the type of claim alleged against the municipality." *Id*. Where the claim is a failure-to-train claim, "the theory stems from the municipality's failure to teach its employees

8

not to violate a person's constitutional rights," and "the violated right in a failure to train case 'must be clearly established because a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear.'" *Id.* (quoting *Arrington-Bey v. City of Bedford Heights, Oh.*, 858 F.3d 988, 995 (6th Cir. 2017), and collecting cases). Since the alleged violation here was not clearly established, Denver could not have been deliberately indifferent to it. *See Arrington-Bey*, 858 F.3d at 995; *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 393 (8th Cir. 2007) ("a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (collecting cases).

The Tenth Circuit's opinion in this case established that Officer Dulayev did not violate clearly established law. This has left all of Mr. Heard's municipal liability claims without any underlying violation of clearly established law. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283-91 (10th Cir. 2019) (applying identical municipal liability standard to failure to train, failure to supervise, and failure to discipline theories). Recent cases from the Tenth Circuit show that this is fatal to those claims. The Court should reconsider its summary judgment determination based on this intervening law.

### IV. Other Intervening Changes in the Law of Municipal Liability Further Justify Reconsideration

In the nearly two years since the parties argued the summary judgment motion, other relevant decisions have issued that both alter and clarify the law of § 1983 municipal liability claims in this Circuit. Since these decisions were not available to the parties or the Court when summary judgment was argued in this case, they represent another ground for reconsideration of the Court's Order.

9

First, in his response to Denver's arguments against his ratification claim, Mr. Heard relied on "one of Judge Matsch's last opinions," which allowed a ratification claim against Denver to go forward based on allegations "of inadequate investigation or distorting information provided." [Doc. #78 at 26-27 (quoting *Valdez v. Macdonald et al.*, No. 15-cv-00109-RPM, 2019 WL 1651857 (D. Colo. Apr. 17, 2019). Subsequently, however, Hon. Judge William Martinez reconsidered that order, concluding that he "cannot agree with Judge Matsch's statement … that Denver is liable if any individual officer is liable because Denver reviewed the individual officers' conduct and found it to be within an unspecified city policy." *Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2019 WL 6838959, at *5 (D. Colo. Dec. 16, 2019). Judge Martinez reasoned that "so-called 'ratification' liability could attach to Denver only if Valdez proves that Denver understood the facts as Valdez understands them—*i.e.*, that Motyka shot at him out of anger, even though he (Valdez) was surrendering and posed no threat—and approved of *that* scenario as within the relevant city policy." *Id.* (emphasis original). Ultimately, Judge Martinez granted Denver summary judgment on plaintiff's reformulated ratification claim. *Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2020 WL 3963717, at *4 (D. Colo. July 13, 2020).[1]

To the extent this Court found Mr. Heard's argument based on *Valdez* to be persuasive, it should reconsider that argument in light of Judge Martinez's subsequent determinations, and likewise grant summary judgment on the ratification claim here. Mr. Heard cannot show that Denver policymakers understood the facts as he alleges them—indeed, as discussed above, the

---

[1] Both parties appealed this summary judgment determination in *Valdez*, and those appeals remain pending. *See* Tenth Circuit Case Nos. 21-1401 (appeal) and 21-1415 (cross-appeal). However, the ratification claim is not at issue in either appeal.

Tenth Circuit has already determined that some of those factual allegations are blatantly contradicted by the record—and thus his ratification claim should fail as a matter of law.

Second, in *Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021) the Tenth Circuit significantly redefined "deliberate indifference" in the context of failure-to-train claims. Noting the difficulty of "answering after the fact" the question of whether the need for additional training was obvious, the *Lance* court adopted a three-part test from the Second Circuit as "a sensible, workable way to determine whether a particular problem is likely to recur enough to alert county officials to an obvious deficiency in the training:"

1. The county's policymakers know to a moral certainty that their employees will confront a given situation.

2. The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult.

3. The wrong choice will frequently cause the deprivation of a citizen's constitutional rights.

*Lance*, 985 F.3d. at 801-802, *quoting Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir. 1992) (quotations and alterations omitted). Here, the second prong of *Lance*'s test dooms Mr. Heard's claim. The situation faced by Officer Dulayev—whether to use a Taser "where, despite repeated warnings and orders to stop, an assault suspect continues to step toward [him] at close proximity," *Heard v. Dulayev*, 29 F.4th at 1202—is indisputably and directly addressed by Denver's existing policies. [Doc. #71 at 7-8 (citing and quoting use-of-force policy); Doc. #78 at 5 (admitting authenticity) & 23 (admitting "the written UOF policies are constitutional").] There was no obvious deficiency, no additional training was required to equip Officer Dulayev to face this situation, and thus deliberate indifference cannot be shown.

11

Finally, and most recently, the Tenth Circuit rejected municipal liability theories very similar to Mr. Heard's in *Finch v. Rapp*, No. 20-3132, 2022 WL 2431586 (10th Cir. July 5, 2022). Like Mr. Heard, the plaintiff in *Finch* alleged that "(1) the City's inadequate investigative and disciplinary process following police-involved shootings and (2) its custom of using lethal force on unthreatening civilians" caused his constitutional injuries. *Id*. at *7. Even though the *Finch* panel denied qualified immunity to the individual officer, it affirmed summary judgment for the municipality, finding that his allegations of inadequate investigation and evidence of an unwritten "custom" of excessive force—more than 20 "police-involved shootings over the six years preceding" the incident at issue—was insufficient to establish a pattern or satisfy "the demanding standard of causation that we require in *Monell* cases." *Id*. at *8-9. Upon reconsideration, the Court should apply the same rigorous standards to Mr. Heard's claims here.

WHEREFORE, the City and County of Denver respectfully requests that the Court reconsider its Order Denying Motion for Summary Judgment, grant summary judgment to Denver on Plaintiff's remaining municipal liability claims, dismiss the Complaint against Denver in its entirety, and issue any other necessary and proper relief.

DATED this 19th day of July 2022.

Respectfully submitted,

By: *s/ Geoffrey C. Klingsporn*
Geoffrey C. Klingsporn, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, Colorado 80202.
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: geoffrey.klingsporn@denvergov.org
*Attorney for Defendant Denver*


## CERTIFICATE OF SERVICE

I certify that on this 19th day of July 2022 I electronically filed the foregoing **CITY AND COUNTY OF DENVER'S MOTION TO RECONSIDER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Erica T. Grossman
John R. Holland
Anna Holland Edwards
Dan Weiss
Rachel Kennedy
Holland, Holland Edwards & Grossman, PC
1437 High Street
Denver, CO 80218
erica@hheglaw.com
john@hheglaw.com
anna@hheglaw.com
dan@hheglaw.com
rachel@hheglaw.com
*Attorneys for Plaintiff*

*s/ Camelia Close*
Denver City Attorney's Office